# O'Conner Mining & Manufacturing Co. *v.* Coosa Furnace Co.

*Bill in Equity by Creditor to set aside Conveyances as Fraudulent.*

1. *Transactions between corporations acting through same persons as directors.*—The directors of a private corporation, in the transaction of its business, are the agents of the corporation and its stockholders, and they can not bind it by a contract in reference to a matter in which they have an adverse personal interest; and in transactions between two corporations which have adverse interests, if the same persons act as directors for each of them, either corporation may avoid the contract, without regard to the question of advantage or detriment; but the contract is only voidable at their instance, and creditors can not assail it except on the ground of fraud, though the dual relation of the directors is a circumstance to be considered in determining the good faith of the parties.

APPEAL from the Chancery Court of Etowah.

Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed on the 1st November, 1886, by the O'Conner Mining & Manufacturing Company, a private corporation organized under the laws of Alabama, against the Coosa Furnace Company and the Gadsden Iron Company, both Alabama corporations, the Wabash Iron Company and the Vigo Iron Company, two Indiana corporations, and against A. L. Crawford and his two sons, J. P. Crawford and A. J. Crawford. The complainant was the owner of an iron mine near Gadsden, and on the 18th December, 1882, leased said mine, with its fixtures, appurtenances, &c., to the Coosa Furnace Company for the term of ten years, the lessee undertaking to pay an annual royalty of fifteen cents per ton on all iron mined, not less than 50,000 tons annually. Claiming a breach of this contract in failure to pay the royalty, the complainant instituted an action at law against the lessee, and the action was pending when the bill in this case was filed. The Coosa Furnace Company was organized with a capital stock of $125,000, its only stockholders being said A. L. Crawford and his two sons;

and its works were located near the complainant's iron mine. On the 7th April, 1884, the Coosa Furnace Company executed a mortgage conveying substantially all of its property to the two Indiana corporations and A. L. Crawford, as security for debts due to each of them, which, as recited, aggregated $125,000. On the 18th July, 1885, the Coosa Furnace Company conveyed most of the mortgaged property, by absolute deed, to the Wabash Iron Company, on the recited consideration of $60,000; and that company, at the same time, sold and conveyed the property, on the recited consideration of $55,000, to the Gadsden Iron Compay, a new corporation organized by the Crawfords as stockholders.

The bill assailed the validity of the mortgage and of the deeds to the Wabash Iron Company and the Gadsden Iron Company, on the ground that they were executed with the intent to hinder and delay creditors, and that the consideration was simulated. The bill prayed that said conveyances be set aside, and the property be condemned to the satisfaction of complainant's debt, as ascertained by the register on the statement of an account; also, that the unpaid subscriptions of the Crawfords for stock in the Coosa Furnace Company be also ascertained, and personal decrees be rendered against them for their respective indebtedness. An amended bill was afterwards filed, alleging that the Coosa Furnace Company was insolvent when the original bill was filed; and a receiver was asked and appointed.

On final hearing on pleadings and proof, the chancellor held that the complainant had failed to make out a case for relief, but did not dismiss the bill, retaining the case for a settlement of the receiver's accounts. The complainant appeals, and assigns the decree as error.

DUNLAP & DORTCH, for appellant, cited Morawetz on Corporations, §§ 787, 517, 520, 525; Cook on Stock & Stockholders, 661, and notes; *Haywood v. Lincoln Lumber Co.*, 64 Wis. 639; Jones on Liens, § 86; Story's Equity, 1252; *Bank of St. Mary's v. St. John*, 25 Ala. 566; 59 Ala. 139; *Rouse v. Merchants' Nat. Bank*, 15 Amer. St. Rep. 644.

AIKEN & MARTIN, and WATTS & SON, *contra*, cited *Globe Iron R. & C. Co. v. Thacher*, 87 Ala. 458; *Twinlick Oil Co. v. Marbury*, 91 U. S. 587; *Kelly v. Railroad Co.*, 141 Mass. 496; 135 Mass. 367; *Hurts v. Brown*, 77 Ill. 226; *Buell v. Buckingham*, 16 Iowa, 284; *Whitwell v. Warner*, 20 Vermont, 425; *Ashurst's Appeal*, 60 Penn. St. 290; 47 Conn. 47; 1 Spear's Eq. 545; *Sargent v. Webster*, 13 Metc. 497; *Gas Co. v. Berry*,

113 U. S. 322; 19 Central L. J. 368; 2 Amer. St. Rep. 263; 66 Amer. Dec. 165; *Duncombe v. Railroad Co.*, 84 N. Y. 190; 16 N. J. Eq. 229; Field on Corporations, 196.

WALKER, J.—The bill was filed by the O'Conner Mining & Manufacturing Company as a simple contract creditor of the Coosa Furnace Company, and its principal purpose was to reach and subject to the payment of the debt claimed certain property alleged to have been fraudulently conveyed by the Coosa Furnace Company, first, by a mortgage executed on the 7th day of April, 1884, and again, as to a part of the property, by a deed of absolute conveyance executed on the 13th day of July, 1885. The specified ground of attack upon the conveyances in question is, that they were executed for the purpose and with the intent to hinder, delay or defraud the complainant, and to prevent it from enforcing collection of its just demands; and that the debts the mortgage was given to secure, and also the considerations recited in the deed, were simulated and not real. The execution of the two instruments is alleged in the bill, and is admitted in the answer. The instruments must stand, unless the particular infirmities charged against them are shown by the evidence. There are no allegations to support a contention that their formal execution by the corporation was insufficient in any particular.

The charge that the considerations recited in the two instruments respectively were simulated and not real is not sustained by the proof. The defendants proved, without contradiction, that the debts secured by the mortgage were due from the mortgagor, and represented full value received by it; and, also, that the consideration mentioned in the deed was paid in the discharge of debts which were secured by the mortgage, and that the property conveyed was not at that time worth as much as the amount of the debts in payment of which it was received. We would have to ignore the uncontroverted evidence in the case to arrive at any other conclusion on the subject than that the debts correctly represented money actually advanced to the Coosa Furnace Company and bills contracted by it.

Much stress is laid in the bill, and in the argument of counsel for the appellant, upon the relations existing between the several defendants during the time covered by the transactions which are sought to be impeached. The dealings in question were between the Coosa Furnance Company, on the one side, and the Wabash Iron Company, the Vigo Iron Company, A. L. Crawford and his two sons,

J. P. Crawford and A. J. Crawford, on the other side. It is true that each of the corporations mentioned was controlled and dominated by the Crawfords. The great bulk of the stock in each of them was owned and held by members of the Crawford family. The board of directors in each of the corporations was composed of the Crawfords and their adherents. It thus plainly appears that the transactions were between the Coosa Furnace Company and some of its own stockholders and directors, and also two other corporations having boards of directors composed of the same persons who managed and controlled the first named company.

The directors of a business corporation are its agents. Though they may not be trustees in the technical sense, yet they exercise functions of a fiduciary character. Their position implies that confidence is reposed in them. The duties which a director assumes to the corporation and to the stockholders thereof disqualifies him from binding the corporation in a transaction in which he is adversely interested. He can not at the same time act for himself and for his principal, without the full knowledge and free consent of the principal. In Morawetz on Private Corporations, § 528, it is said : "A person who is agent for two parties can not, in the absence of express authority from each, represent them both in a transaction in which they have contrary interests. This rule is based upon the same reason as the rule which prohibits an agent from representing his principal, when his personal interests are opposed to his duty. The principal stipulates for the judgment and skill of his agent, and the latter has no authority to act, when he is not in a position to give the principal the benefits of his best endeavors. It follows, therefore, that the directors, or other agents of a corporation, have no implied authority to bind the company by making a contract with another corporation which they also represent." If the same persons as directors of two different companies represent both companies in a transaction in which their interests are opposed, such transaction may be avoided by either company, or at the instance of a stockholder in either company, without regard to the question of advantage or detriment to either company. Both the corporations are armed with the right to repudiate such a transaction, no matter how fair and open it may be shown to be.—*Memphis & Charleston R. Co. v. Woods*, 88 Ala. 630, 641.

But the duty which disqualifies the directors from binding the corporation by a transaction in which they have an

adverse interest, is one owing to the corporation which they represent, and to the stockholders thereof. A principal may consent to be bound by a contract made for him by an agent who, at the same time, represented an interest adverse to that of the principal. A *cestui que trust* may elect to confirm a transaction which he could have repudiated on the ground that the trustee had an interest in the matter not consistent with his trust relation. In like manner, dealings between corporations, represented by the same persons as directors, may be accepted as binding by each corporation and the stockholders thereof. The general rule is, that such dealings are not absolutely void, but are voidable at the election of the respective corporations, or of the stockholders thereof. They become binding, if acquiesced in by the corporations and their stockholders. *Kelly v. Newburyport Horse Railroad*, 141 Mass. 496 ; *Ashurst's Appeal*, 60 Pa. St. 290-314 ; *Buell v. Buckingham*, 16 Iowa, 284 ; *Manufacturers' Saving Bank*, 97 Mo. 38 ; *Alexander v. Williams*, 14 Mo. App. 13 ; *Twinlick Oil Co. v. Marbury*, 91 U. S. 587 ; *Booth v. Robinson*, 55 Md. 419 ; *U. S. Rolling Stock Co. v. Atlantic & Great Western R. Co.*, 32 Am. Rep. 390 ; Taylor on Private Coporations, (2d Ed.) § 630 ; 1 Beach on Private Corporations, § 247.

The directors of a corporation, in the transaction of its business and the disposition of its property, do not stand in any such relation to the general creditors of the corporation as they occupy to the corporation itself and to its stockholders. They are not the agents of such creditors, nor can they usually be regarded as trustees acting in their behalf. The creditors are not entitled to disaffirm a transfer of the property of the corporation, made by its directors or other agents, merely because the corporation itself or its stockholders could have done so. When a disposition of the property of a corporation is assailed by its creditors, they are not clothed with the right of the corporation or of its stockholders to set aside the transaction, regardless of its fairness or unfairness, on the ground that it was entered into by representatives of the corporation who had put themselves in a relation antagonistic to the interests of their principal. The right of the creditor to impeach the transaction depends upon its fraudulent character. The question in such case is, was the transaction which is complained of entered into with the intent to hinder, delay or defraud creditors? Was the property fraudulently transferred or conveyed? The mere fact that the corporation, in disposing of its property, dealt with persons who at the same time

were charged with the duty of representing its interests, does not, by itself, render the transaction fraudulent.— *Globe Iron Roofing & Corrugating Co. v. Thacher*, 87 Ala. 458.

Where the property of a corporation is transferred to another corporation represented by the same directors, the fact of such relationship is a circumstance well calculated to arouse suspicion, and calls for a rigid and severe scrutiny in the examination of such transaction when it is assailed by a creditor. When such a relationship is shown to exist between the contracting parties, clearer and fuller proof must be given of a valuable and adequate consideration, and of the good faith of the parties, than would be required if the transferree or grantee had been a stranger. When, however, such examination is made, and such proof is forthcoming, and the result is that no fraud or unfair dealing is shown, and it appears that the transaction was not vitiated by any infirmity of which a creditor has the right to complain, then the transaction must stand, and it is as valid, as against the creditor, as if the corporation had dealt with a stranger, who was not involved in any way with the corporate representatves.

In the present case, the proof offered by the defendants shows fully, and in great detail, the circumstances connected with the dealings between the defendants, corporations and individuals. The several witnesses were subjected to rigid examinations. The considerations to support the several debts which figured in the transactions are clearly and distinctly proved. That the mortgage was given to secure debts justly due, and that the deed was executed in *bona fide* and absolute payment of a portion of such debts, in property which was not worth more than the true amount of the debts paid therewith, are facts clearly shown by testimony which is not contradicted in any way. We do not feel at liberty to discredit and reject the full and consistent versions of the matters in controversy given by several of the witnesses, merely because these witnesses were the persons in control of the several corporations which were engaged in the dealings in question. There is no prohibition against a corporation dealing with its own stockholders or directors in reference to matters in which such stockholders or directors have interests adverse to those of the corporation; or against several corporations which are controlled by the same persons, dealing with each other. Nor is there anything wrong in a corporation conveying its property as security for, or in absolute satisfaction of, obligations honestly assumed in such dealings, if such transfer involves no fraud

upon the rights of other creditors. The evidence in this case fails to show that the conveyances which are assailed were fraudulent as charged.

It is alleged in the amendment to the bill that the Coosa Furnace Company was insolvent at the date of the execution of the mortgage, and has been insolvent ever since that time. Even if it could be conceded that the fact of insolvency, if proved, would create such a change in the relations between the directors and the creditors of the corporation as to take from the directors the right to allow one or more creditors to acquire an advantage over the others in the application of the corporate assets to the payment of debts; yet such concession could have no effect upon the result in this case, because the evidence wholly fails to show that the company was insolvent when the mortgage was made. It plainly appears that the company was insolvent fifteen months after the date of the mortgage. Its property was then worth very much less than it cost. What it was worth at the time the mortgage was executed, is not shown. It appears from the evidence that the value of furnace property is very fluctuating. The value of the company's assets at the date of the mortgage is not proved, nor is it shown that they were then worth less than the amount of the company's liabilities at that time. The inference that the company was insolvent at the date of the mortgage does not follow from the proof of insolvency more than a year afterwards. The insolvency of the company at the date of the deed does not affect the validity of that instrument, for the operation of the deed was merely to transfer, in absolute payment of a debt, property which had been conveyed as security therefor at a date when the corporation is not shown to have been insolvent.

The leasehold interest of the Coosa Furnace Company and the income from the leased property are assets of that insolvent corporation. It is shown that the Gadsden Iron Company has been receiving the output from the mines. It is not alleged or proved that the latter company has paid less for the ore than it was worth, and it is not shown that it is chargeable with fraud in the purchase thereof. The complainant, as a simple-contract creditor without a lien, is seeking to reach the output from the mines, and to subject it to the payment of its demands. Its claim in this regard is a legal demand which may be enforced by proceeding at law. There is no obstacle to hinder the complainant from reaching this property by legal process. The bill can not be regarded as a creditors' bill, supported by the equitable

demand for a settlement of the affairs of an insolvent corporation, as it is filed in behalf of the complainant alone, and not in behalf of itself and of other creditors, and for an administration of the assets and a ratable distribution among the creditors entitled to share therein. The bill is framed under the statute authorizing a creditor without a lien to file a bill in chancery to subject property fraudulently transferred or conveyed, or attempted to be fraudulently transferred or conveyed.—Code, § 3544. As, in our opinion, the proof fails to sustain the charge that the transactions which are assailed were fraudulent, the conclusion is that the complainant is not entitled to relief. The decree to that effect must be affirmed.

Affirmed.