[S. F. No. 5812. In Bank.—October 7, 1913.]

# SAUSALITO BAY LAND COMPANY (a Corporation), Respondent, v. SAUSALITO IMPROVEMENT COMPANY (a Corporation), Appellant.

TRIAL—OMISSION TO MAKE FINDING—ABSENCE OF EVIDENCE.—Where a defendant introduces no evidence in support of an allegation in his cross-complaint, he cannot complain of the failure of the court to make any finding in respect thereto.

CORPORATIONS — INTERLOCKING DIRECTORATE — VALIDITY OF TRANSACTIONS—RATIFICATION.—Where one corporation deals with another, and the same persons, constituting the majority of the directorate of each company, control the deal, there being no actual or intended fraud, the transaction is not void but only voidable, and may be ratified by either party by conduct having that legal effect, and thereby made binding upon the party so ratifying it.

ID.—CONTRACT TO PURCHASE LAND—RATIFICATION BY MINORITY STOCKHOLDERS.—The right to claim that a contract for the sale and purchase of land made between two corporations, the majority of whose directors, officers, and stockholders are composed of the same persons, is invalid by reason of such fact, is waived and the contract ratified by the minority stockholders who pay assessments levied for the purpose of making payments on the contract, with full knowledge of the facts and without objection, and for thirteen years take no steps toward repudiation.

ID.—RATIFICATION OF CONTRACT—LAPSE OF TIME AS SHOWING.—If a person entitled to avoid a contract on such ground is informed of the facts upon which his right rests, and thereafter delays taking any steps to avoid or repudiate the transaction until a period equal to the statute of limitations has expired, the presumption is that he has ratified it. Under some circumstances a much shorter time will justify the presumption.

ID.—CONTRACT FOR PURCHASE OF LAND—DEFAULT BY VENDEE—FORFEITURE—TENDER OF DEED.—Where a vendor under a contract for the sale of land allows all the payments to become past due, and thereafter accepts partial payments, the forfeiture is waived; the payment of the balance, and the execution of a deed, thereupon become dependent and concurrent conditions. Nonpayment alone does not put the vendee in default; the vendor must tender a deed as a condition to demanding payment of the price, and he cannot, without such tender, declare a forfeiture.

ID.—ACTION TO QUIET TITLE—TENDER OF DEED TO DEFAULTING VENDEE.—In an action to quiet title by a vendor against his defaulting

vendee, after the acceptance of overdue payments, *it is* unnecessary for the vendor to tender a deed and demand payment of the balance of the purchase price, where the conduct of the vendee has been such as to amount to a waiver of such tender, or a refusal of performance in any event, or an abandonment of the contract.

Id.—Extent of Relief Awarded—Modification of Judgment.—In such form of action the plaintiff is not entitled to recover the balance due on the purchase price, and a provision in the judgment awarding him such relief will be modified on appeal.

APPEAL from a judgment of the Superior Court of Marin County and from an order refusing a new trial.   T. J. Lennon, Judge.

The facts are stated in the opinion of the court.

Bishop, Hoefler, Cook & Harwood, and Finlay Cook, for Appellant.

Andrew G. Maguire, and Archibald J. Treat, for Respondent.

SHAW, J.—The plaintiff sued the defendant to quiet title to two parcels of land. The complaint is in the usual form, alleging title and possession in plaintiff and that defendant claims an interest in the land without right.

The defendant, by cross-complaint sets up a claim for damages against the plaintiff under an executory agreement for the sale of the land made by the plaintiff and defendant on October 24, 1890. The plaintiff at that time was the owner of the land. It desired to dispose of the same and for that purpose the officers and stockholders of plaintiff formed and organized the defendant corporation and subscribed for the majority of its capital stock, intending that the defendant should buy the land, erect a wharf thereon, it being on the water front of Sausalito, and there carry on the business of selling fresh water to be obtained from the plaintiff to ocean steamers. The agreement of sale was then executed. The plaintiff agreed to sell to the defendant, and the defendant agreed to buy, the land, for the sum of fifteen thousand dollars. Two thousand dollars was paid in cash, three thousand dollars was to be paid on or before October 24, 1891, and the remainder in installments of two thousand five hundred dollars each

year thereafter, the last payment being due on October 24, 1895. A failure to pay was declared to operate as a forfeiture of the defendant's rights and the money already paid was thereupon to be retained as liquidated damages. At that time the majority of the directors of the two companies was composed of the same persons, as were also the majority of the other officers and stockholders. In course of time $6081.58 was paid on the principal of the price and $4298.22 on the interest. The defendant never at any time had any property other than this land, nor any means of buying or paying for it, except by assessments on its capital stock. Five thousand four hundred dollars was expended by defendant in improvements on the land. The money to make the payments and for the improvements was all raised by stock assessments. This action was begun on January 8, 1903. From and after the year 1898, no payments whatever were made on the price of the land and no business was carried on by the defendant. During all this time the majority of the directors, officers, and stockholders continued to be composed of the same persons and they continued to manage and control both companies. Nothing was done to raise money to perform the contract on the part of the defendant. So far as it was concerned, the enterprise was abandoned. So far as the evidence shows, the last assessment was made in 1898, and no further effort was made by the defendant or its managing officers or majority stockholders, to complete the purchase, or to do business of any kind. The cross-complaint alleges a rescission of the contract in April, 1903, after the action was begun, and prays for damages in the sum of twenty-five thousand dollars. The only foundation shown for damages is the money paid on the price and on the improvements.

The defendant alleges that this contract was procured by false representations made by the majority directors to the minority stockholders, whereby they were induced to take the stock and consent as stockholders to the making of the agreement, and that the entire scheme was fraudulently designed and contrived by the majority directors, officers, and stockholders to defraud the defendant and the minority stockholders, and that for that purpose and being in control, they intentionally remained inactive and refrained from levying assessments or doing anything whatever to pay the money or

carry on the business of the defendant.    These matters are also alleged as a defense, in the answer.    The court found that all the allegations of false representations, fraud, and fraudulent intent, were untrue.    It is not contended that these findings are contrary to the evidence, and therefore the elements of actual fraud and of false representations must be eliminated from our consideration of the case.    It is admitted by the pleadings that in April, 1903, the defendant made an attempt to and did rescind the contract, so far as it could do so without the consent of the plaintiff.

Judgment was given declaring that the plaintiff is the owner in fee of the land, that it "have judgment against the defendant" in the sum of $13,316.94, being the sum remaining unpaid on the principal and interest of the purchase price of the land, and that its title to the land be quieted as against all claims of the defendant; provided, that upon payment of the sum aforesaid, with interest, within six months from the date of the entry of the judgment, the plaintiff should execute to the defendant a good and sufficient deed for the property.    The defendant appeals from this judgment and from an order denying its motion for a new trial.

The cross-complaint alleges that the value of the parcels of land does not and never did exceed five thousand dollars.    This is denied by the plaintiff in its answer thereto.    There is no finding as to the value of the land.    There was, however, no evidence on that subject.    The defendant having made the allegation and having introduced no evidence to prove its truth, the failure of the court to make any finding regarding it is an omission of which the defendant cannot complain. (*Winslow* v. *Gohransen,* 88 Cal. 453, [26 Pac. 504] ; *Macomber* v. *Bigelow,* 126 Cal. 13, [58 Pac. 312].)

The main contention of the defendant is that, by reason of the fact that the majority of the directors, officers, and stockholders of the two companies, those who controlled and managed the affairs of the defendant, were the same during all the period in question, and the fact that they, having and exercising control, did nothing toward completing the performance of the agreement of sale, but allowed it to lapse, the plaintiff cannot recover, or assert any right to forfeit the contract, or any right under it.    It is insisted that, regardless of the absence of actual fraud, or bad intent, and even if they

were at all times acting in good faith, as must be presumed in view of the unassailed findings, their conduct constituted constructive fraud upon the defendant, sufficient to justify a rescission at the defendant's demand and to excuse the delay in making such demand for rescission, and hence, that the defendant is entitled to recover the money paid on the land and improvements. In this connection it must be noted that a short time before this demand for rescission was made the minority stockholders of defendant, those having no stock in the plaintiff company, for the first time obtained control of the actions of the defendant.

The rule established in this state is that where one corporation deals with another, and the same persons constituting the majority of the directorate of each company, control the deal, there being no actual or intended fraud, the transaction is not void but only voidable, and may be ratified by either party by conduct having that legal effect, and that it is binding upon the party so ratifying it. (*San Diego* v. *Pacific Beach Co.,* 112 Cal. 53, [33 L. R. A. 788, 44 Pac. 333] ; *Pauly* v. *Pauly,* 107 Cal. 8, [48 Am. St. Rep. 98, 40 Pac. 29] ; *Reclamation Dist.* v. *Birks,* 159 Cal. 237, [113 Pac. 170].) The correct doctrine is well stated in *O'Connor etc.* v. *Coosa F. Co.,* 95 Ala. 618, [36 Am. St. Rep. 251, 10 South. 291], as follows: "If the same persons as directors of two different companies represent both companies in a transaction in which their interests are opposed, such transaction may be avoided by either company, or at the instance of a stockholder in either company, without regard to the question of advantage or detriment to either company. Both the corporations are armed with the right to repudiate such a transaction, no matter how fair or open it may be shown to be. . . . The general rule is that such dealings are not absolutely void, but are voidable at the election of the respective corporations, or of the stockholders thereof. They become binding, if acquiesced in by the corporations and their stockholders." The following authorities are to the same effect: Ashhurst's Appeal, 60 Pa. St. 315; *Buell* v. *Buckingham,* 16 Iowa 293, [85 Am. Dec. 516] ; *Manufacturers' Co.* v. *Big Muddy Co.,* 97 Mo. 45, [10 S. W. 865] ; *Booth* v. *Robinson,* 55 Md. 440; *United States etc. Co.* v. *Atlantic etc. Co.,* 34 Ohio St. 464, [32 Am. Rep. 380] ;

2 Beach on Corporations, sec. 944; 2 Cook on Corporations, sec. 658.

The conduct of the minority stockholders of the defendant who are here seeking in its name to avoid the transaction, and of the other stockholders as well, was equivalent to a ratification of the original sale, and for this reason the agreement became binding upon the corporation and upon them. The general rule, as stated in the authorities above cited, is that if a person entitled to avoid a contract on such ground is informed of the facts upon which his right rests, and thereafter delays taking any steps to avoid or repudiate the transaction until a period equal to the statute of limitations has expired, the presumption is that he has ratified it. Under some circumstances a much shorter time will justify the presumption. Here the contract was made in 1890, and no stockholder did anything toward a repudiation until 1903, a period many times exceeding that of the statute of limitations. It is not claimed that any of them were ignorant of the facts. The evidence shows that they were all familiar with all the facts from the beginning. There is also further evidence of ratification. At least seven stock assessments were levied by the defendant upon its stockholders, after the execution of the agreement, to raise the money which was paid thereon and for the improvements. These assessments began immediately after the agreement was made, and continued at intervals until 1898. They were paid by all the stockholders, including those now representing the defendant, with full knowledge of all the facts and without objection. Such payment and acquiescence was clearly a ratification of the agreement and a waiver by these stockholders and by the corporation of the right to claim that the agreement is invalidated by the fact that it was executed by the same persons as directors of both companies.

It follows, also, as a result of this conclusion, that no cause of rescission existed in 1903 at the time the defendant, according to its allegations, rescinded the contract, and that no rights accrue to the defendant from that attempt to rescind.

It is further claimed that in order to put the defendant in default and authorize the plaintiff to treat the contract as terminated and sue to quiet title, the plaintiff should have tendered a deed to the defendant and demanded payment of the

price, and that as it has not done so, the contract still sub-
sists, the defendant may still perform it and the plaintiff can-
not have his title quieted.  Where the vendor allows all the
payments to become past due, and thereafter accepts partial
payments, the forfeiture is waived, the payment of the bal-
ance, and the execution of a deed, thereupon become depend-
ent and concurrent conditions, "nonpayment alone does not
put the vendee in default, the vendor must tender a deed as a
condition to demanding payment of the price, and he cannot,
without such tender, declare a forfeiture." (*Boone* v. *Tem-
pleman,* 158 Cal. 297, [139 Am. St. Rep. 126, 110 Pac. 947] ;
*McCroskey* v. *Ladd,* 96 Cal. 459, [31 Pac. 558].)  So far as
plaintiff is concerned, in the absence of such tender and re-
fusal, it having accepted part of the price after maturity of
the whole, the contract would still stand, and it could not have
a decree declaring that it is the owner in fee and that defend-
ant has no interest, unless the conduct of the defendant in the
matter has waived a tender or amounts to a refusal to per-
form in any event, or an abandonment of the contract.  Prior
to the beginning of the action there were no negotiations be-
tween the plaintiff and the defendant corporation or its offi-
cers looking to a tender of a deed.  The common managing
directors and stockholders of the two companies had seen that
the defendant's enterprise was a failure, and had practically
abandoned it by mutual consent.  The stockholders of the
defendant who had none of the plaintiff's stock and who now
control the action of the defendant, had failed to do anything
concerning the matter, and had declared to plaintiff that they
could raise no more money to pay the debt.  They also had
practically abandoned the contract.  When they first gained
control of defendant's affairs, after the action had begun,
instead of endeavoring to pay the money and obtain a deed
they proceeded to give notice of rescission, that is, they repu-
diated the obligation of the contract, and upon that action
they still stand.  During the trial the plaintiff offered to con-
vey the land to the defendant on payment of the price, with
an abatement of part of the interest, and the defendant re-
fused.  The court, however, in its judgment, continued this
offer, and gave the defendant the benefit of the contract as
if it were still in existence, by the provision that upon pay-
ment of the balance due within six months, the plaintiff

should convey to the defendant. Under all these circumstances we think that the plaintiff has done all that equity requires, and that a previous tender of a deed must be deemed to have been waived. (*Gray* v. *Dougherty,* 25 Cal. 280; Warvelle on Vendors, sec. 756; 28 Am. & Eng. Ency. of Law, 5; *Lawrence* v. *Miller,* 86 N. Y. 131.)

It appears that a technical error was made in the form of the judgment. The plaintiff is not entitled, in this form of action, to recover of the defendant the balance due upon the purchase price. The judgment appears to include such a provision. We think, however, that it was not so intended. Nevertheless, a modification should be made by striking out the objectionable language. The appellant does not raise this objection, and we do not think it justifies the imposition of costs because of the modification.

The order denying a new trial is affirmed.

The judgment is modified by striking out the following part thereof: "That plaintiff have judgment against the defendant and cross-complainant in the sum of $13,316.94, and costs of suit, which are hereby taxed at $       ." And inserting instead thereof the following:

"That the balance of the purchase price of said property, and interest, under the agreement mentioned in the findings, is the sum of $13,316.94."

As thus modified the judgment is affirmed, without costs.

Sloss, J., Angellotti, J., Lorigan, J., Henshaw, J., and Melvin, J., concurred.

Rehearing denied.

In denying a rehearing the court filed the following opinion on November 6, 1913.

THE COURT.—The appellant, in a petition for rehearing, takes a statement in the opinion herein to the effect that the persons controlling both companies had "practically abandoned the *enterprise* of the defendant company, by mutual consent," and another statement that the defendant company had "practically abandoned the *contract,*" and from these statements assumes that the opinion declares that the *contract*

was abandoned by both parties thereto by mutual consent. Upon this basis, counsel argue that, under the doctrine stated in *Joyce* v. *Shafer*, 97 Cal. 335, [32 Pac. 320], when both parties to a contract abandon it, either party may recover the money paid on it. The remarks in the opinion do not have the effect assumed. Counsel fail to note the significance of the words used. The remarks were made in the course of the discussion of a different question. Lest others may also misunderstand it, we take this occasion to explain that the "enterprise" of the defendant, that is, its business of selling water to ocean steamers, was the thing which was referred to as "practically abandoned" by mutual consent. It had proven a failure and wisdom dictated its abandonment. But the opinion says only that the defendant company "had practically abandoned the contract," not that the plaintiff had done so, or that both companies had abandoned it. In the connection in which it occurs, this means only that defendant had abandoned all effort to perform it. The plaintiff company had never evinced any intention to do otherwise than stand upon the contract and enforce it. There was no abandonment of the contract by both parties such as is necessary for the application of the rule referred to in *Joyce* v. *Shafer*.

The petition for a rehearing is denied.

Beatty, C. J., dissented from the order denying a rehearing.