[Sac. No. 2676. In Bank.—August 7, 1919.]

## JULIUS LEMLE, Appellant, v. MARY M. BARRY et al., Respondents.

[1] VENDOR AND VENDEE—VENDOR WITHOUT TITLE—VALID CONTRACT.— Where there has been no fraudulent misrepresentation as to the vendor's title, the fact that he has an imperfect title, or no title at all, at the time of the execution of a contract of sale does not invalidate the contract, since it is sufficient if the vendor has good title at the time he is called upon to perform.

[2] ID.—CONTRACT OF SALE—DEPENDENT AND CONCURRENT CONDITIONS —DEFAULT OF VENDEE—TENDER OF DEED.—The vendor under a contract of sale which makes the execution of a deed and payment of the first half of the purchase price dependent and concurrent conditions cannot put the vendee in default until he has tendered his deed, even though time is of the essence of the contract.

[3] ID.—ATTEMPTED ABANDONMENT—RIGHTS OF VENDEE.—Under a contract of sale providing for the payment of one-half of the purchase price (inclusive of the initial payment) sixty days after its execution, at which time it was contemplated the vendors were to make the deed, the failure of the vendee to make such payment did not put him in default, in the absence of the tender of a good and sufficient deed, and an attempt by the vendors to declare a forfeiture in effect amounted to an unauthorized attempt to abandon the contract, which the vendee had the right to treat as such, and recover the money paid.

APPEAL from a judgment of the Superior Court of Tehama County. John F. Ellison, Judge. Reversed.

The facts are stated in the opinion of the court.

Theodore A. Bell for Appellant.

Frank Freeman and Frank L. Hatch for Respondents.

WILBUR, J.—This action is brought by the vendee to recover from the vendor the initial payment of five thousand dollars made by the vendee at the time of the execution of the written contract for the sale of land. Plaintiff appeals from a judgment rendered upon sustaining a general demurrer. The contract, which is set out as an exhibit to the complaint, was entered into July 31, 1912, for the sale of the

"Barry Ranch," containing nine thousand four hundred acres of land, at the price of fifteen dollars per acre. The terms of payment were thus stated: "Five thousand dollars to be paid on the execution of this agreement; one-half of the full purchase price to be paid on or before sixty days after the execution of this agreement; balance to be secured by note and mortgage payable on or before three years after date; said note and mortgage to be of approved form and with the usual covenants and conditions found in mortgages of real property. The same to bear interest at the rate of six per cent per annum, payable annually, etc." It also provided: "It is expressly understood between the parties hereto that the said party of the second part shall at the expiration of sixty days from and after the second payment herein stipulated and agreed to be paid and provided further that said second party shall have made said first payment as herein agreed and otherwise conformed to said stipulation and agreement be entitled to enter upon and take possession of said premises, and farm the same in a manner pursued for like land; but said party of the second part hereby and herein agrees not to sell, convey, or otherwise encumber the whole or any portion of said land until said deed and mortgage has been executed according to the terms herein and heretofore contained." The agreement also contained the usual provision that time is of the essence of the agreement, including the following provision, to wit: "And the said parties of the first part, on receiving such payments at the time and in the manner above mentioned, agree to execute and deliver to the party of the second part, his administrators or assigns, a good and sufficient deed to the property above described." Apparently the parties contemplated that upon the making of the sixty-day payment, the vendor would execute a deed and the vendee execute a note and mortgage for one-half of the balance of the purchase money. This construction of the contract seems to accord with the contract of the parties, for, within sixty days from the date of the contract, the vendors furnished the vendee an abstract of title continued to August 12, 1912. On September 17, 1912, the vendee's attorney reported to the vendee his conclusion with reference to the abstract of title and on or about said date the vendee communicated said report to the vendors with a written demand that the alleged defects therein be corrected. The attorney's

report upon the abstract in question, which is set out in full in the complaint, is to the effect that it appeared therefrom that the vendors owned the title in fee to an undivided four-sevenths of most of the property known as the Barry ranch, and that three-sevenths belonged to Mary M. Barry (five-fourteenths) and to John H. Barry (one-fourteenth.) Other objections to the title are not clear, in the absence of the abstract, which is referred to in the report. One objection is that the abstract shows that one and one-third acres of land had been deeded to the trustees of the Cottonwood school district. It is alleged in the complaint that the vendors never at any time have corrected or remedied the defects in their title and that they never have presented a good and merchantable title to said premises, and have never been able to convey to the plaintiff a good and sufficient and merchantable title to said premises, and it is also alleged that the vendors have never performed or offered to perform any of the covenants contained in their agreement or tendered the plaintiff any deed or conveyance to said property. It is further alleged that on June 4, 1913, the vendors delivered to the vendee a notice, set out in the complaint in part, as follows: "You are hereby notified that you have forfeited any and all rights which you may hold in and to that certain agreement . . . dated the thirty-first day of July, 1912, . . . and said parties of the first part therein hereby declare such forfeiture by reason of your noncompliance with the terms and conditions of said agreement, and hereby terminate the same. . . . That subsequent to the service of such notice . . . the plaintiff demanded of the vendors the return to him of the five thousand dollars; which he had paid them''; that the vendors requested of plaintiff time to consider his demand, and particularly to consider the objections which the plaintiff had made to their title to said premises, which request plaintiff granted; and from time to time, at the request of the vendors, extended the time for the vendors to consider plaintiff's demand and the ground of his objection to said title until November 13, 1914, when the vendors, for the first time, notified the plaintiff that they would not return to him the five thousand dollars, or any part of the same. It is further alleged that the abstract of title was returned by the vendee to the vendors September 17, 1912, and that it was retained by them until July, 1914, "when they caused said

abstract to be delivered to William Grant, at San Francisco, who was then and there acting as attorney for plaintiff in an attempt to satisfy Frank Freeman, Esq., who was then and there acting as attorney for the vendors in the premises, that the vendors' title to said land was defective, and that unless the defects in said title were corrected, the vendors should return to the plaintiff the five thousand dollars paid to them as aforesaid, but thereafter, to wit, on or about September 1, 1914, said abstract was returned to the vendors, and has at all times since been retained by them and not in the possession or under the control of this plaintiff; that plaintiff hereby elects to treat said contract as terminated by reason of the vendors' said breach thereof, and the plaintiff hereby offers, upon the return to him by the vendors of said sum of five thousand dollars with interest from June 4, 1913, at the rate of seven per cent per annum, to reconvey to the vendors, by a good and sufficient written conveyance, any and all interest which this plaintiff may have acquired in or to said premises by reason of the execution of said agreement, and to surrender said agreement to the vendors.''

The effect of a complete failure and of a defect of title of the vendor upon the relations of vendor and vendee has frequently been considered by the courts of this state. [1] Where there has been no fraudulent misrepresentation as to the vendor's title, the fact that he has an imperfect title, or no title at all, at the time of the execution of the contract of sale does not invalidate the contract of sale. (*Joyce* v. *Shafer,* 97 Cal. 335, [32 Pac. 320]; *Buckman* v. *Park,* 157 Cal. 607, 610, [137 Am. St. Rep. 153, 108 Pac. 686]; *Krotzer* v. *Clark,* 178 Cal. 736, [174 Pac. 657]; *Kerr* v. *Reed,* 39 Cal. App. 11, [179 Pac. 399].) ''In a case such as this it is permissible for one to contract to convey title to land which he does not own, and he is in default under such contract only when the vendee has performed his part of the contract and made demand for a title which the vendor is unable to furnish.'' (*Hanson* v. *Fox,* 155 Cal. 106, [132 Am. St. Rep. 72, 20 L. R. A. (N. S.) 338, 99 Pac. 489], quoted with approval in *Buckman* v. *Park,* 157 Cal. 610, [137 Am. St. Rep. 153, 108 Pac. 687].) It is sufficient, therefore, if the vendor has good title at the time he is called upon to perform. One-half of the purchase price (inclusive of the initial sum of five thousand dollars) was to be paid sixty days after the execution

of the contract. We may assume, as the parties seem to have done, and as we think the contract means, that the vendors were to make the contemplated deed upon such payment of one-half the price. The making of the deed and the payment of that part of the price were, therefore, dependent and concurrent conditions. **[2]** In such case, even though time is of the essence of the contract, the vendor cannot put the vendee in default until he has tendered his deed. (*Boone* v. *Templeman,* 158 Cal. 290, 297, [139 Am. St. Rep. 126, 110 Pac. 947], and cases cited; *Sausalito etc. Co.* v. *Sausalito Imp. Co.,* 166 Cal. 308, [136 Pac. 57].) It follows that on June 4, 1913, the vendee was not in default for failure to make the payment due sixty days from the date of the contract, and that the attempt to declare a forfeiture on the theory that the vendee was in default was unavailing and that the contract still remained in full force and effect. (*Boone* v. *Templeman,* 158 Cal. 298, [139 Am. St. Rep. 126, 110 Pac. 947].) Under the circumstances the vendors' notice was, in effect, an unauthorized attempt to abandon the contract. It is true that their action was predicated upon the erroneous claim that the vendee was in default for failing to make the sixty-day payment. If the vendee, in fact, had been in default, a notice that the contract was terminated would have been proper, and the vendors would be no longer bound, either to convey the land or refund the purchase money. Such notice would have been in strict accord with the contract. (*Glock* v. *Howard,* 123 Cal. 1, 10, [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713]; *Oursler* v. *Thatcher,* 152 Cal. 739, [93 Pac. 1007]; *Skookum Oil Co.* v. *Thomas,* 162 Cal. 539, 549, [23 Pac. 363]; *Cross* v. *Mayo,* 167 Cal. 594, [140 Pac. 283]; *Meyers* v. *Williams,* 173 Cal. 301, [159 Pac. 982].) **[3]** As it was, the vendee immediately upon receiving the vendors' unwarranted notice had the right to treat the same as an abandonment of the contract, and to the return of the installment of the purchase price theretofore paid. (*Glock* v. *Howard, supra.*) The vendee, it is true, delayed his demand for reimbursement, and when made it remained under consideration for some months by the vendors, until November 13, 1914, when they finally refused to make such repayment and failed to go on with the contract. With reference to the long delay of the vendee in making such demand for reimbursement, it is sufficient to say that the vendors requested delay and

that, although the contract was in effect all this time, no effort was made by the vendors to correct the title, or to tender a deed, and they did not withdraw their declaration that the contract was terminated. Hence, the legal effect of the demand of the vendee for the return of the purchase money paid was the same as though made at once.

The judgment is reversed.

Shaw, J., Lennon, J., Angellotti, C. J., Lawlor, J., Olney, J., and Melvin, J., concurred.