[L. A. No. 6547. In Bank.—November 12, 1921.]

## JOHN N. KERR, Respondent, v. DAVID C. REED et al., Appellants.

[1] VENDOR AND VENDEE—MATURITY OF FINAL PAYMENT—DUTIES OF PARTIES.—When the final payment comes due under a contract for the sale of land in which time is of the essence of the contract, the obligation to make the payment and the obligation on the part of the vendor to make a deed are dependent and concurrent conditions.

[2] ID.—TENDER OF DEED—WAIVER.—A vendee under a contract of sale may either expressly or by implication waive the tender of a deed by the vendor, or tender may be excused by conduct showing that it would be a vain and useless ceremony.

[3] ID.—QUESTION OF FACT—APPEAL.—Waiver of tender of a deed under a contract of sale is a question of fact, and when supported by sufficient evidence to justify the inference of waiver the finding is binding upon the appellate court.

[4] ID.—FAILURE TO TENDER DEED—SUBSEQUENT SALE—RESCISSION—RIGHT OF VENDEE.—Where both parties under a contract of sale, in which time was made of the essence, allowed the date of final payment to pass without action, and the vendor subsequently sold the land to a third party without putting the vendee in default by a tender of a deed, he thereby breached his obligation, and the vendee was entitled to treat such sale as a rescission of the contract and to sue for a recovery of moneys paid.

APPEAL from a judgment of the Superior Court of San Diego County. T. L. Lewis, Judge. Affirmed.

The facts are stated in the opinion of the court.

M. A. Luce, Robert B. Murphey and Hunsaker, Britt & Cosgrove for Appellants.

Dwight D. Bell for Respondent.

WILBUR, J.—This is an action brought by a vendee of real estate to recover from the vendor installments of the

4. Right of vendee in contract of sale of real property to recover payments, note, L. R. A. 1917B, 540.

Right of vendee to recover payments upon resale by vendor after vendee's default, note, 35 L. R. A. (N. S.) 532.

purchase price paid to him, amounting to $5,600, upon the theory that the contract dated December 4, 1912, had been rescinded by mutual consent. The contract price was $25,000; $5,000 paid upon the execution of the contract; $5,000 and a mortgage for $15,000 for the balance of the purchase price to be paid December 4, 1913, interest at six per cent, payable quarterly. Interest was paid as follows: $300, March 15, 1913; $150, June 4, 1913; $150, July 1, 1913; $65.63, September 4, 1913; $69.03, November 10, 1913. The vendee on December 4, 1913, was in default as to the interest, $165.34, and also had failed to pay the taxes due in November, but in lieu thereof had given a note for $182.87. Time was made of the essence of the contract by the following clause:

"Time is hereby declared to be of the essence of this contract, and should purchaser fail or neglect to make said deferred payments, or any of them, at the times and in the manner herein provided, then and in that event this receipt and contract shall at once become null and void, and the said parties of the first part shall be at once released from any and all obligations to make any conveyance hereunder, or to convey the property herein described to said purchaser. It being agreed that it is impossible to fix and determine the actual damage arising out of the failure of said purchaser to make said deferred payments, it is hereby agreed that all moneys paid upon the purchase price of said property shall be by the parties of the first part retained and held as and for liquidated damages arising and caused by the failure of the said purchaser to comply with the terms hereof.

"And the parties of the first part, on receiving such payment, at the time and in the manner above mentioned, agree to execute and deliver to the party of the second part, or to his assigns, a good and sufficient deed conveying said property to said party of the second part or his lawful assigns, and to furnish a certificate of title from the Union Title and Trust Company, showing property free and clear of encumbrance from date of November 23rd, 1912."

Nothing was done on the 4th of December, 1913, by either party. The vendee had been placed in possession under the contract, that is to say, under the arrangement made the rents from the property were collected by an agent and cred-

ited to the vendee on account of the interest due on the contract. Some time after the fourth day of December, 1913, at the direction of the defendant this agent began to credit the rentals to the vendor. **[1]** It is thoroughly established that when the final payment comes due under a contract in which time is the essence of the contract the obligation to make the payment and the obligation on the part of the vendor to make a deed are dependent and concurrent conditions. (Sec. 1439, Civ. Code; *Boone* v. *Templeman,* 158 Cal. 290, 297, [139 Am. St. Rep. 126, 110 Pac. 947], and cases cited; *Sausalito etc. Land Co.* v. *Sausalito Imp. Co.,* 166 Cal. 302, 308, [136 Pac. 57]; *Lemle* v. *Barry,* 181 Cal. 6, 10, [183 Pac. 148]; *Lemle* v. *Barry,* 181 Cal. 1, 3, [183 Pac. 150]; *Hoppin* v. *Munsey,* 185 Cal. 678, [198 Pac. 398].)

On December 4, 1913, the date of the final payment, the vendor was to give the deed and the purchaser to tender the purchase money. Without action on the part of either, neither could claim the other was in default. The plaintiff testified and the court found that he was totally unaware of any intention on the part of the vendor to declare a forfeiture or to consider the contract terminated until July, 1914, when he was notified that the vendor had sold the property. This sale was made June 15, 1914, without any arrangement by which the vendor could subsequently make title to the plaintiff herein, and, consequently, if the contract was then in force as to both parties, the sale constitutes a breach of contract on the part of the vendor which the vendee might take advantage of by rescission and suit to recover money paid on account of purchase price. (*Brimmer* v. *Salisbury,* 167 Cal. 522, [140 Pac. 30].) The vendor has never tendered the vendee a deed, nor has the purchaser ever tendered the purchase money. The plaintiff does not allege that he was at any time ready, able, and willing to pay the purchase price, and relies wholly upon the implied rescission arising from the sale by the vendor to a third party and plaintiff's subsequent demand for a return of the purchase money theretofore paid by him as a consent thereto.

This case was previously tried and a motion for a nonsuit was granted. An appeal was taken to this court and as-

signed to the district court of appeal, second division, where the judgment was reversed. (*Kerr* v. *Reed,* 39 Cal. App. 11, [179 Pac. 399].)

Upon the new trial the plaintiff recovered judgment for the full amount paid by him on the contract, less the rental value of the premises during the time he was in possession. The vendor appeals from this judgment. He claims that the respondent waived a formal tender of the deed on December 4, 1913, and, therefore, that such tender was unnecessary to put the vendee in default. (*Hoppin* v. *Munsey, supra.*) Mr. Swayne, Mr. Fleet, and the defendant testified that the day before the final payment came due, to wit, December 3, 1913, the vendee stated to the vendor that it would be impossible for him to make the payment which was due the next day; that he was "all in" and could not raise the money, and that the vendor thereupon stated that he would give no extension of time and would stand on the contract. The defendant also testified that the plaintiff had made similar statements in September, 1913; that plaintiff then said that he would be unable to meet his payments any more; that he was "all in"; that he had to pay some notes for his father-in-law in Denver, and he could not pay any more. He said he had put in about twenty-five thousand dollars in San Diego and it would all be a loss. This testimony, if believed by the trial court, would undoubtedly be sufficient to justify a finding by that court that the tender of the deed on December 4th was waived, and that the purchaser, being in default, had no right to recover the purchase money theretofore paid by him. (*Hoppin* v. *Munsey, supra.*) The testimony of the plaintiff, however, conflicted with that of the defendant and his witnesses.

The plaintiff testified that in July, 1913, he was unable to pay the full amount of the three hundred dollars due as interest and that the defendant told him to do the best he could and that he would let the rents apply on the interest as collected; that about November 20, 1913, the payment of five thousand dollars due December 4, 1913, was mentioned by Mr. Fleet, defendant's agent. Plaintiff testified: "I told him I didn't think I would be able to meet it at that time, and he said not to let it worry me, that they would take care of it all right." At that time it was

arranged that the defendant would pay the taxes then due
on the premises, which the vendee had contracted to pay,
and to accept a written agreement of plaintiff bearing in-
terest in lieu of such payment. Plaintiff testified that no
other conversation occurred with either Mr. Fleet, Mr.
Swayne or Mr. Reed until December 10, 1913, and that he
had not seen any of them between November 20th and
December 10th; that on December 10th he asked Mr. Fleet,
defendant's agent, for a written statement as to when he
might pay the balance due on the contract. To this re-
quest Mr. Fleet responded: "Well, don't ask Mr. Reed for
any written statement on this. He has never taken any-
body's money and he won't take yours." Subsequently
plaintiff stated he talked with Mr. Reed, the defendant, who
told him not to worry; that it could be arranged some way;
that neither the defendant nor Mr. Fleet informed the
plaintiff at these conversations that they considered the
contract forfeited or that they considered themselves in
possession of the property. The plaintiff admitted on cross-
examination that on December 4, 1913, he did not have
sufficient funds to meet the five thousand dollar payment,
but that he did have some money and property from which
money could be raised. The plaintiff does not specifically
deny the above-mentioned conversations testified to by de-
fendant and the witnesses Swayne and Fleet as having
occurred between November 20th and December 4th, except
by denying that any conversation occurred between Novem-
ber 20th and December 4th. It is contended by appellant
that plaintiff in effect merely denied the date of the con-
versations and not the conversations themselves. But the
court may well have believed that he meant to deny the
conversations. If we accept the plaintiff's testimony, it
follows that whatever may have been said before the 20th
of November, 1913, the parties then regarded the contract
as still in force. The plaintiff then gave a new obligation
to pay the taxes then due under the contract and requested
and received assurance that he would not be pressed for
the payment due December 4, 1913.

[2] The tender of the deed was due from the defendant
on December 4th. The tender could have been waived by
the vendee expressly or by implication or excused by con-
duct showing that the tender would be a vain and useless

ceremony. (*Hoppin* v. *Munsey, supra.*) There was no express waiver of the tender of the deed and the implied waiver to be inferred from the conversation of November 20th, testified to by the plaintiff, was, of course, conditioned upon the waiver of payment when due. Hence, if the defendant had tendered his deed on December 4th he might be in a condition to declare a default for the nonpayment of the amount then due, but without such tender it is clear he could not declare such default unless the tender was excused under the law, on the theory that it would have been a useless ceremony. (*Hoppin* v. *Munsey, supra.*) But here, according to plaintiff's testimony, both parties regarded the contract as still in force, after the plaintiff's statements of his inability to pay, and for that reason made arrangements to pay the taxes, and, according to the plaintiff, on December 10th defendant recognized the contract as still in force. In this state of the evidence the trial court found the fact to be: "That plaintiff never by act, word, or otherwise waived any provision or covenant of, or right under, the contract . . ." While this finding is attacked as not supported by the evidence, the testimony of the plaintiff was sufficient to support the finding, notwithstanding his failure to specifically deny the conversations attributed to him by defendant's witnesses. **[3]** The question of waiver is a question of fact, and when supported by sufficient evidence to justify the inference of waiver is binding upon this court. **[4]** In view of this finding and others by the court along the same line, we have the simple situation where both parties to a contract in which time is made the essence thereof allow the date of final payment to pass without action. Under these circumstances neither party can be subsequently placed in default by the other without a tender. (*Lemle* v. *Barry, supra.*) It follows that the contract was in full force and effect at the time the vendor made the conveyance to a third party and thereby breached his obligation. The plaintiff was justified in treating this as a rescission and upon consenting thereto to sue for a recovery of the money paid by him.

Appellant strongly relies upon the cases of *Glock* v. *Howard etc. Co.,* 123 Cal. 1, [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713], and *Schwerin Estate Realty Co.* v. *Slye,* 173 Cal. 170, [159 Pac. 420], and also upon the

case of *Skookum Oil Co.* v. *Thomas,* 162 Cal. 539, [123 Pac. 363]. It is sufficient to say that the contract in the case at bar is substantially identical with that involved in the recent cases of *Lemle* v. *Barry, supra,* and *Hoppin* v. *Munsey, supra,* and, being controlled by these late cases, if any inference is to be derived from the cases relied upon by the appellant pointing to a different conclusion, a point which we need not decide, those cases are controlled by the more recent decisions of *Lemle* v. *Barry, supra,* and *Hoppin* v. *Munsey, supra.*

The judgment is affirmed.

Angellotti, C. J., Shaw, J., and Shurtleff, J., concurred.

Sloane, J., deeming himself disqualified, did not participate.