[Civ. No. 11664. Second Appellate District, Division One.—January 23, 1939.]

LUCILE J. MONNETTE, Respondent, v. TITLE GUARANTEE AND TRUST COMPANY (a Corporation), Appellant.

M. J. Rankin and Milo V. Olson for Appellant.

Frank M. Gunter and G. Harold Janeway for Respondent.

YORK, P. J.—On September 9, 1930, the respondent as buyer, and appellant as seller, entered into contracts for the sale of two lots situated in the Del Rey hills. These contracts provided for an initial payment on the purchase price, the balance payable in equal annual instalments thereafter; and also provided that upon compliance by the buyer of all the terms and conditions therein expressed, seller would deliver a sufficient grant deed to the lots in question as well as a guarantee of title. On November 9, 1932, when the final payment upon the said contracts became due, appellant notified respondent of that fact, but the latter delayed making said final payment at the instance of appellant's selling agent, Dickinson & Gillespie Corporation, who advised respondent that appellant was having some difficulty with regard to certain agreed street improvements. Appellant did not then or at any other time offer or tender to respondent either the deed or the certificate of title provided by the terms of the contracts.

On April 2, 1934, respondent tendered and offered to pay to appellant the unpaid balance of the purchase price upon receipt from appellant of the said deed and guarantee of title. Appellant made no attempt to comply with said offer, whereupon respondent obtained a title search from the Title Insurance & Trust Company from which she ascertained that on October 30, 1933, appellant had lost its title to the lots through foreclosure of a trust deed, and on April 4, 1934, respondent gave to appellant a written notice of rescission of said contracts of sale and demanded a return of all amounts paid by her upon the purchase price.

On April 16, 1934, respondent filed the instant action praying for the sum of $2,935.36 alleged to have been paid by her upon said contracts of sale. Prior to the commencement of said action, respondent Monnette had assigned to Roland T. Kinney, the original plaintiff herein, all her claim and demand against appellant by reason of the facts alleged in the complaint, and on January 13, 1937, said Kinney reassigned all said claim and demand to respondent, who was thereupon substituted as party plaintiff, and an amended and supplemental complaint filed wherein it is alleged that on May 2, 1935, appellant accepted the rescission made by respondent but failed to restore to respondent the money paid by her under the terms of the contracts.

During the course of the trial it was stipulated that "G. Harold Janeway had full and complete authority to represent his sister, Lucile J. Monnette, in all matters touching the purchase of the property described in the complaint and in the handling of the contracts mentioned in the complaint, and to act as her attorney-in-fact and agent in relation to same, and all acts done for or on her behalf by said G. Harold Janeway were authorized and ratified by said Lucile J. Monnette."

The trial court found in favor of respondent and from the judgment rendered for the amount prayed for in the complaint this appeal is prosecuted.

It is here urged by appellant (1) that respondent was guilty of the first breach of the contracts and therefore had no right to rescind on April 4, 1934; (2) that a tender of a deed at the date when the last instalment fell due would have been an idle gesture, therefore a formal tender of a deed was unnecessary to place respondent in default; (3) that ap-

pellant was acting as trustee, which fact was known to respondent, and judgment in no event should have been rendered against appellant in any capacity other than as such trustee.

Both contracts of sale contained the following forfeiture clause:

"It is expressly understood and agreed that time is of the essence of this agreement and in the event of the failure of the Buyer to comply with all or any of the terms or conditions hereof in the manner and within the time herein specified, this agreement shall become null and void as fully as if it had never been made, and the Seller shall be released from all obligation in law or equity to convey said premises, and the Buyer shall forfeit all right thereto and to all moneys theretofore paid under this agreement, but the Seller on receiving full payment at the times and in the manner herein specified, and upon the Buyer complying with all the terms and conditions of this agreement, agrees to deliver to the Buyer a good and sufficient grant deed with a guarantee of title of the Title Guarantee and Trust Company showing the title to said premises vested in the Seller free of incumbrances. . . . ''

Appellant here urges that the foregoing provision was never waived nor the time of payment of the final instalment extended by appellant and that the selling agent, Dickinson & Gillespie Corporation, had no authority to extend the time or otherwise waive or modify the terms of the said contracts.

Respondent bases her right to recovery upon the fact that no tender of a deed was made by appellant when the last instalment became due, and contends that the forfeiture clause heretofore referred to made the tender of the deed and certificate of title conditions concurrent with the payment of the final instalment.

It is revealed by the record herein that appellant held the property in question under a subdivision trust and that Dickinson & Gillespie Corporation was the selling agent, although the contracts for sale are silent with regard to these facts, there being no designation therein of appellant as trustee.

From the evidence adduced at the trial, it appears that Mr. Janeway held a note executed by Dickinson & Gillespie Corporation, carrying the endorsement of Fritz Burns, president of said corporation, and of Robert Burns, his brother, who

was also an officer thereof, which note Mr. Janeway wished to have offset against the purchase price of the two lots which his sister was buying under the hereinbefore mentioned contracts of sale. When respondent received notice that the final payment would be due on November 9, 1932, Mr. Janeway telephoned to Mr. Robert Burns, who testified regarding said conversation as follows: "I told Mr. Janeway that if he would hold up making this payment that I believed in the near future we could work out an arrangement where we could offset that note and we could also get him credit for the street improvements that had not been put in. I told him that we were getting credit against contracts for the amount of the street improvement work on lots where there were larger balances owing, but that on his lots, or rather on the lots of Mrs. Monnette, we could not get that credit at present because the balances on the lots were equal to the amount of money necessary to release the lots for deed . . . In any event, I told him that if he made the payment at that time, I was sure he would pay his money in and he would not get any street improvements, or would he ever be able to get any credit for his street improvements, because the trust had no money; and I told him not to pay any money until I got in touch with him." Mr. Burns and Mr. Janeway had various other conversations relative to this matter, and on January 31, 1934, Mr. Burns transmitted a letter to Mr. Janeway in which it was stated:

"We are therefore writing you in regard to the contracts which you hold covering the above described lots. The principal balance on each of these contracts is $553.78 and the accrued interest to Feb. 9, 1934 is $64.59 on each, making a total of $1236.74 necessary to pay the contracts off in full.

"At the time these lots were sold, the original owner of the property agreed to grade the streets and install water mains and gas mains, and agreed that in the event the property was used for oil development, they would deduct the cost for such work from the balance owing on the contracts. We are enclosing herewith an estimate . . . estimating the cost of this work for said lots at $133.58.

"At present you own a note of the Dickinson & Gillespie Corporation in amount of $227.50 on which there is accrued interest in the amount of $37.87, making a total of $265.37,

which amount may be deducted from the balance owing on these contracts.

"After making the above allowance, there remains a balance of $837.79 necessary to pay off these contracts. *As soon as we are in receipt of this amount we will have issued to you a deed and guarantee of title in accordance with our agreement.*" (Italics added.)

Mr. Janeway testified that on April 2, 1934, he called at the office of appellant and tendered a cashier's check for the balance due on the contracts to Mr. Utter, an employee of appellant, who stated: "We find ourselves in rather an embarrassing position about these lots. Negotiations are now with the Burns Brothers. If you want to leave this check we will give you a receipt for the money." Mr. Janeway replied that the contracts called for delivery of deed and certificate of title concurrently with the payment of said balance, and that he would prefer to have the deed delivered when he delivered the check. Mr. Utter then said that they were not prepared to deliver the deed and Mr. Janeway left and obtained a title report from which he learned that title to said lots was not in appellant. On April 4, 1934, he wrote appellant rescinding the contracts and "on behalf of Mr. Kinney and Mrs. Monnette, and as their attorney, (I) hereby demand payment from you of all amounts heretofore paid by them, respectively, on these contracts, together with legal interest on the respective payments, from date of payment".

In *Kerr* v. *Reed,* 187 Cal. 409 [202 Pac. 142], cited by respondent, which involved a contract containing a forfeiture clause almost identical with that here in question, the court stated (p. 411) : "It is thoroughly established that when the final payment becomes due under a contract in which time is the essence of the contract the obligation to make the payment and the obligation on the part of the vendor to make a deed are dependent and concurrent conditions. (Sec. 1439, Civ. Code; *Boone* v. *Templeman,* 158 Cal. 290, 297 [110 Pac. 947, 139 Am. St. Rep. 126] . . . and cases cited; *Sausalito etc. Land Co.* v. *Sausalito Imp. Co.,* 166 Cal. 302, 308 [136 Pac. 57] . . . ; *Lemle* v. *Barry,* 181 Cal. 6, 10 [183 Pac. 148] . . . ; *Lemle* v. *Barry,* 181 Cal. 1, 3 [183 Pac. 150] . . . ; *Hoppin* v. *Munsey,* 185 Cal. 678 [198 Pac. 398]. . . . )"

It therefore appears that at any time between November 9, 1932, and the date of the foreclosure proceedings in October

30, 1933, it was within the power of the appellant to have placed respondent in default by tendering a deed to the lots and demanding the balance due on the purchase price. However, the record reveals that a tender of the deed and certificate of title was never made at any time by appellant.

It is here argued by appellant that ''assuming (but not conceding) that there was a duty on the appellant to tender a deed in order to place the plaintiff in default, that duty is not necessary where such a tender would have been unavailing. Such a tender on September 9, 1932, or November 9, 1932, would have been unavailing, it is obvious because when a tender was later made on January 31, 1934, payment was not then made''.

Again quoting from *Kerr* v. *Reed, supra,* at page 411: ''On December 4, 1913, the date of final payment, the vendor was to give the deed and the purchaser to tender the purchase money. Without action on the part of either, neither could claim the other was in default. . . . if the defendant had tendered his deed on December 4th, he might be in a condition to declare a default for the nonpayment of the amount then due, but without such a tender it is clear he could not declare such default unless the tender was excused under the law, on the theory that it would have been a useless ceremony. (*Hoppin* v. *Munsey, supra.*) But here, according to plaintiff's testimony, both parties regarded the contract as still in force, after the plaintiff's statements of his inability to pay, and for that reason made arrangements to pay the taxes and, according to plaintiff, on December 10th, defendant recognized the contract as still in force. . . . It follows that the contract was in full force and effect at the time the vendor made the conveyance to a third party and thereby breached his obligation.''

In the instant case, neither offer nor tender of the deed was ever made by appellant to respondent. The offer of January 31, 1934, was made by Dickinson & Gillespie Corporation, some months after appellant had lost title, consequently appellant is not in any position to take advantage of such offer, and thereby attempt to place respondent in default.

In the circumstances presented by the record and upon the authority of the decision of *Kerr* v. *Reed, supra,* it is conclusive that a tender of the deed by appellant when the final

payment became due was essential to place respondent in default. Since respondent was not in default on April 4, 1934, when she tendered a cashier's check in payment of the last instalment and discovered appellant no longer had title to the lots, she was entitled to rescind her contracts and recover the money paid thereon.

 There is nothing in the contracts which would intimate in any way that appellant executed them as trustee or that the lots covered thereby were held in trust. It was attempted to be shown that Mr. Janeway had knowledge to that effect and that as agent of respondent such knowledge was imputable to her. Mr. Janeway testified that there was nothing in a transaction which he had negotiated a year or so before with reference to lots in the same tract which would indicate that it had any connection with the instant transaction, and that he did not know that appellant held the lots here in question as trustee for Dickinson & Gillespie Corporation. In the circumstances, this was a question of fact for the determination of the trial court, and that court's finding against appellant's contention is conclusive upon appeal.

 Appellant makes the further point that respondent is not entitled to interest from the respective dates of the payments made upon said contracts, but only from April 4, 1934, the date when she gave notice of rescission. There is no merit in this contention. (See *Bonnelfillio* v. *Ricks*, 214 Cal. 287 [4 Pac. (2d) 929].)

The findings and the judgment of the trial court are amply supported by the evidence.

The judgment is affirmed.

Doran, J., and White, J., concurred.