[Civ. No. 14030.   First Dist., Div. Two.   Aug. 10, 1949.]

LE ROY J. THEIN, Appellant, v. ALBERT STICHA et al., Respondents.

Joseph A. Brown for Appellant.

Marvin G. Giometti, Alex L. Arguello and J. Joseph Sullivan for Respondents.

GOODELL, J.—Appellant brought this possessory action against respondents, who filed a cross-complaint for specific performance. The court found in respondents' favor, and from a decree entered on the findings this appeal was taken.

Appellant owned a piece of improved real property in Bayshore City, San Mateo County. Respondents owned a piece of improved real property in Mill Valley, Marin County. On February 3, 1946, two agreements were entered into between the parties for the sale of the Bayshore City property to respondents and for the sale by them to appellant of the Mill Valley parcel (together with some personal property). These two agreements, which may be treated as one, fixed the price of appellant's Bayshore City property at $7,150, and of respondents' Mill Valley property at $2,000 (inclusive of the personal property).

On February 5, respondents conveyed the Mill Valley property to appellant and transferred to him the personal property thereon, consisting of two stoves, a Ford tractor, a double

bottom plow, fence posts and lumber and an insurance policy on the property. This was the first step in the performance of the contracts and entitled respondents to a credit of $2,000 on their purchase of the Bayshore City property.

Under the contracts the balance of $5,150 was payable within 30 days, but despite the fact that it was not paid on time, appellant on March 5, turned over the possession of the Bayshore City parcel to respondents, who moved in. This was the second step toward consummation and it showed that strict performance was not being insisted on at that juncture.

Respondent Albert Sticha was eligible for a veteran's loan and the purchase for the most part was to be financed thereby. The record shows that appellant knew this.

On May 25, Title Insurance and Guaranty Company of San Francisco (designated in both contracts for the closing of the transaction), received from the Department of Veterans' Affairs its commitment for a loan to Sticha of $5,200 on the Bayshore City property. This was the third step toward consummation. One of the Title Company's officers testified that that company treated this commitment as the equivalent of cash, and the court found that it was cash, paid in by respondents as the balance on the contract.

In the meantime, in February, appellant had made out a deed of the Bayshore City property naming the Stichas as grantees, but on being informed that it had to run to the Department of Veterans' Affairs it was withdrawn.

On June 19, appellant wrote a letter to respondents directing attention to the fact that the contract of February 3 called for the closing of the deal within 30 days, and concluding with the ultimatum "that unless you comply with the terms of our agreement within two weeks, I shall take advantage of my legal rights by bringing an action at law to declare the contract breached and institute an action of eviction." This letter was misdirected by appellant, and respondents never received it; it was returned to appellant, and is in evidence. It was written, obviously, without knowledge of the fact that three weeks before its date the $5,200 Veterans' commitment had been lodged with the Title Company. Had the respondents received the letter they undoubtedly would have called appellant's attention to the $5,200 then lying in the Title Company awaiting appellant's deed. Any confusion arising from the misdirection of appellant's June 19 letter cannot, of course, be charged against respondents.

On August 14, appellant lodged with the Title Company a deed to the Bayshore City property and served on respondents a notice thereof, but included therein a demand for $5668 instead of $5,150. This ultimatum gave respondents five days within which to close the transaction. No action resulted, the five days expired, and on August 24, appellant served notice on respondents to vacate the Bayshore City property. On August 28, respondents decided, in order to close the transaction amicably, to submit to the appellant's exaction of the additional money, but appellant did not accede, and brought this action for eviction.

It is appellant's contention that the lodgment on August 14, of the deed with the Title Company was performance on his part which put respondents in default. It is respondents' contention that the lodgment on August 14 of the deed *with conditions attached which went beyond respondents' contractual obligation* was not a good tender but was utterly ineffective to put them in default.

The first inquiry is whether respondents were in default before June 19, the date of the misdirected and undelivered letter. The part of their obligation which was to convey the Mill Valley property was punctually performed within two days of the date of the contract, when they made the deed and transferred the personal property. They alleged in their cross-complaint that these transfers had been made and as their allegation was not denied it never became an issue in the case. It is an admitted fact that the $5,200 commitment was in the hands of the Title Company on May 25, which was three weeks before appellant in his misdirected letter attempted to make an issue of delay on respondents' part. Respondents were not in default on June 19.

All that remained, then, was for appellant to deliver a proper deed to the Title Company without any new conditions attached and for that company to make the usual adjustments and prorations of taxes and insurance and deliver the money to appellant and the deed to respondents.

There was no obligation imposed on respondents to notify appellant that the $5,200 was on hand in the Title Company awaiting appellant's deed. At that stage of the proceedings the Title Company was the agent of both parties (*Shreeves v. Pearson,* 194 Cal. 699, 707, 708 [230 P. 448]; 10 Cal.Jur. 587) "And . . . the knowledge possessed by such agent is to be imputed to each of the parties to the escrow" (*Ryder v. Young,* 9 Cal.App.2d 545, 553 [50 P.2d 495], citing cases).

The next inquiry is whether the delivery of the deed to the Title Company on August 14 put respondents in default. The notice served on respondents showed that the deed was accompanied by appellant's demand for $5,668 which appellant specified as follows:

| "Purchase price of property | $7150.00 |
|---|---|
| Money due seller for rent and back interest | 418.00 |
| | $7568.00 |

| Less allowance for equity of purchaser's property in Marin County less One Hundred Dollars ($100.00) previously paid by Mr. Thein | 1900.00 |
|---|---|
| Total owed seller | $5668.00 . . ." |

(There was no explanation of how the $418 item was arrived at or made up.)

"An offer of performance must be free from any conditions which the creditor is not bound, on his part, to perform" (Civ. Code, § 1494.)

Respondents were unquestionably bound to pay $5,150, the balance on the purchase price. But were they bound to pay $418 "for rent and back interest?" They had conveyed the Mill Valley property at once and appellant had possession of it and of the personal property which went with it. Respondents had been placed in possession of the Bayshore City property by appellant; the $5,200 to close the deal had been lying in the Title Company at that time for almost three months.

The court found definitely in respondents' favor on this question. It found that on August 14 when appellant lodged his deed with the Title Company he "made a demand for an additional sum of money, to wit, Four Hundred and Eighteen ($418) Dollars over and above the agreed price as set forth in the agreement . . .". It found "That any loss of interest or benefits suffered by the plaintiff and cross-defendant was occasioned by his own default" and, as a conclusion of law, "That the plaintiff and cross-defendant is precluded from claiming any interest or benefits for the use and occupancy of the premises by the defendants and cross-complainants." If, therefore, the tender of August 14 imposed conditions not

justified by the agreement it was not such an offer of performance as would put the vendees in default.

The conveyance of the Mill Valley property and the personalty left a lump-sum balance of $5,150 owing. No question of installment payments was involved. It is true that time was made of the essence of the contract; it is true, also, that the $5,150 had not been paid within the 30 days, but it is also true that strict performance had not been insisted on before appellant's letter of June 19 which respondents never received. The Veteran's commitment for $5,200 which was treated as cash had been lying in escrow for three weeks before that letter was written.

The rule is settled by numerous cases that "Where the making of a deed and the payment of the purchase money are dependent and concurrent conditions, performance or an offer to perform on the one part, unless waived or rendered unnecessary, is a condition precedent to the right to insist upon a performance by the other. In such case the vendor cannot, in the absence of any excuse therefor, put the vendee in default until he has tendered his deed and demanded payment, even though time is of the essence of the contract; and he may not, without a tender, declare a forfeiture . . ." (25 Cal.Jur. pp. 659-660.) Leading cases on this subject are *Lemle* v. *Barry*, 181 Cal. 6, 10 [183 P. 148] and *Kerr* v. *Reed*, 187 Cal. 409 [202 P. 142]. Recent cases are *Grimes* v. *Steele*, 56 Cal. App.2d 786, 790 [133 P.2d 874] and *Lifton* v. *Harshman*, 80 Cal.App.2d 422, 433 [182 P.2d 222]. What was said in *Kerr* v. *Reed* at page 414 seems to fit the instant case: ". . . we have the simple situation where both parties to a contract in which time is made the essence thereof allow the date of final payment to pass without action. Under these circumstances neither party can be subsequently placed in default by the other without a tender."

It goes without saying that unless appellant could plead and prove that respondents were in default he could not prevail. The trial court, on evidence which was all one way had to find, as it did, that respondents were not in default. It proceeded, then, simply to hold both sides to the performance of their contract. Under its decree each side got that for which it had bargained (except, of course, the litigation).

The judgment is affirmed.

Dooling, J., concurred.