[Civ. No. 3863.   Fourth Dist.   Feb. 3, 1950.]

HOWARD M. HOLDEN, Appellant, v. BEN F. JOHNSON, Defendant and Respondent; ROY R. STROTZ, Cross-defendant and Respondent.

E. John Eriksson and Homer M. Bail for Appellant.

Surr & Hellyer and James R. Edwards for Respondents.

BARNARD, P. J.—The plaintiff subdivided 80 acres of land near Big Bear Lake into so-called "acre lots," the lots being somewhat irregular in size and shape. In May, 1944, a survey of the property had been completed and stakes had been installed marking the lines of the respective lots, but no map of the proposed subdivision had been recorded. An old cabin stood on this property and the plaintiff agreed to sell this cabin, together with the lot upon which it stood, to the defendant Johnson. The purchase price was $400, payable $50 in cash with monthly payments of $25 payable on the 6th day of each month beginning June 6, 1944, with interest at 6 per cent.

The main controversy here is as to whether the lot thus agreed to be sold and on which the cabin stood was Lot 26 as then staked out upon the ground, or whether it was in fact Lot 27 as that lot appears on the map which was recorded nearly two years later. There is evidence that Lot 26, as then staked out on the ground, had an irregular northerly line and included the land on which the old cabin stood. However, when the map of this subdivision was first recorded, on April 23, 1946, the northerly line of Lot 26 was shown as a straight line, thus placing the old cabin on Lot 27.

On May 6, 1944, a written contract was executed by which the plaintiff agreed to sell to Johnson on the terms above mentioned "all of lot described as acre number 26 in Holden Acres,

Big Bear City, with the improvements thereon, as per map of said Tract now on record in the office of the Recorder'' of San Bernardino County.

On May 26, 1945, the plaintiff entered into another contract to sell Lot 26 to Roy R. Strotz and Arthur G. Taylor for $500 on monthly payments. Johnson informed Taylor that he owned that lot by virtue of his contract of sale. Shortly thereafter, Strotz and Taylor began to construct a cabin on this lot and, subsequently, Taylor sold his interest to Strotz.

On April 11, 1946, the plaintiff brought this action to quiet his title to Acre 26, naming Johnson as the defendant. Johnson filed a cross-complaint against Holden and Strotz seeking a conveyance of Acre 26, as containing the site of the cabin, and to quiet his title as against Strotz. Strotz filed a cross-complaint against Holden seeking to recover the amount he had paid and the value of the cabin he had built, in the event it was found that Johnson had a superior title to the lot.

The court found in favor of the defendant Johnson finding, among other things, that on May 6, 1944, Holden had by contract sold to Johnson Lot 26, including the triangular portion containing the old cabin; that prior to entering into this contract of sale Holden had thus pointed out the property to Johnson, showing him its boundaries and stakes and representing these to be the correct boundaries of Acre 26; that Johnson, in reliance thereon, executed the agreement and took possession of the property which he has since retained; that Johnson believed that a map had then been recorded showing said Acre 26 to be bounded and described as pointed out by Holden and as found by the court; that on September 9, 1945, Johnson offered to pay Holden all sums remaining due under the contract upon receiving a deed and certificate of title as called for by the contract; and that the contract was fair and equitable and $400 was then the fair market value of the property. Further findings were made in favor of Strotz upon his cross-complaint. Judgment was accordingly entered requiring Holden to convey Lot 26, including the site of the old cabin, in accordance with the court's findings, to the defendant Johnson provided that Johnson paid, within 30 days, the balance due under the contract. The judgment further provided that in the event Johnson thus paid the balance due and acquired title to Lot 26, the cross-complainant Strotz should recover from Holden the sum of $1,906.15, being the amount Strotz had expended in reliance upon his contract. From this judgment the plaintiff has appealed.

██ The appellant first contends that the evidence is not sufficient to support the findings with respect to the precise property he agreed to sell to Johnson. He contends that there was a mistake in inserting the lot number in the contract of sale; that the parties agreed that Lot 27 should be bought and sold instead of Lot 26; and that after the mistake was discovered Johnson refused to correct it. The appellant testified that he and Johnson looked at the property but did not locate the stakes; that Johnson wanted the cabin and "the land described that it stood on"; that they went to a real estate office to have a contract prepared; that the agent advised them to be sure they had the right description; that Johnson told the real estate agent that it was Lot 26; that they talked the matter over and were to verify the description "when we got a map of the thing"; that sometime the next summer he showed Johnson a map and asked him to have the contract changed to cover Lot 27; and that Johnson refused to do this.

At the time of the sale to Johnson no map had been recorded and none was shown to Johnson. The southerly side of Lot 26 faced on a main road, and there was an old road running across Lot 26 and going to the old cabin, which appeared to be on the northerly side of Lot 26. At that time there was no other road giving access to the old cabin. Johnson testified that the appellant showed him five stakes marking the boundaries of this lot. The boundaries thus pointed out, and indicated by the stakes, included the land on which the old cabin stood as a part of this lot which faced on the main road. Johnson testified that while they were at the real estate office the appellant insisted that this was Lot 26, that a question was raised about the description at the real estate office, and that they both went back to the land and verified the description and found that the appellant was right and that it was Lot No. 26. Johnson then occupied the cabin and continuously used the road across Lot 26. Two other witnesses testified that a little later when they wanted to buy Lot 26, facing the road, the appellant told them that it belonged to Johnson.

The evidence, while conflicting, is amply sufficient to support the findings that the land sold to Johnson, as pointed out on the ground at the time, was the land awarded to Johnson by the judgment. ██ The appellant further contends that Johnson was not entitled to any relief in this action because he was in default in his payments under the contract of May 6, 1944.

There is evidence that Johnson paid $50 down on May 6, 1944, and that he paid another $25 on June 17, 1944, and $25 on July 31, 1944. Early in September, 1944, Johnson offered the appellant another payment and the appellant said that it was not due yet and he did not need it. In the spring of 1945, Johnson did some work for the appellant and there is evidence that the appellant agreed to apply a part of the wages, amounting to $25 and some cents, on the contract for this lot. At that time Johnson wanted to apply all of the wages on the contract and the appellant told him ''Let that go; you need the money'' and not to worry about the contract. Every payment thus made by Johnson was late and was accepted by the appellant without objection. On two occasions the appellant advised Johnson that the payments could be delayed and he permitted Johnson to remain in possession of the property. Under these circumstances, a waiver of prompt payment appears and the court was justified in refusing to enforce a default against Johnson. (*Boone* v. *Templeman*, 158 Cal. 290 [110 P. 947, 139 Am.St.Rep. 126].)

It further appears that in September, 1945, Johnson deposited the full balance due with a title company, and notified the appellant that he was ready to complete the transaction. The appellant refused to furnish a deed and certificate of title, and refused to complete the transaction. The appellant made no demand or attempt to claim a forfeiture until this action was filed in April, 1946. This was long after the payments on the contract were all due and it was then incumbent upon the appellant to tender a deed before he could declare a forfeiture. (*Boone* v. *Templeman*, 158 Cal. 290 [110 P. 947, 139 Am.St.Rep. 126]; *Kerr* v. *Reed*, 187 Cal. 409 [202 P. 142].)

The appellant also contends that error appears in that the court made no finding as to who was entitled to the improvements placed upon Lot 26 by Strotz, it being argued that equity demands that the entire controversy be determined in one action. The question suggested would seem to be answered by section 1013 of the Civil Code. Moreover, no issue in that connection was raised in the trial court. According to his own testimony the appellant knew that Johnson claimed the land in question long before he attempted to sell Lot 26 to Strotz and Taylor. Apparently, his later sale of the property was based upon his mistaken belief that Johnson had lost all his rights by failing to make the payments on time. Be this as

it may, the appellant acted at his own risk in attempting to sell the property to another without taking any steps to terminate Johnson's interest in the property.

The judgment is affirmed.

Griffin, J., concurred.

Mussell, J., being disqualified, does not participate herein.

Appellant's petition for a hearing by the Supreme Court was denied March 30, 1950.