[Civ. No. 4353.   Fourth Dist.   Apr. 18, 1952.]

DOLORES UREN, Appellant, v. MICHAEL S. TROUP et al., Defendants; E. G. LAJOIE, Respondent.

Edwin H. Williams for Appellant.

W. A. McGugin for Respondent.

GRIFFIN, J.—Dolores Uren, hereinafter referred to as plaintiff, brought this action against defendants to quiet title to Lot 17 and the east 15 feet of Lot 18, in Block 5 of Kleinhurst, in Fresno County, which property had a small dilapidated building on it. Since this appeal was perfected, plaintiff died and an administrator has been substituted in her stead.

In their answer defendants deny generally the allegations of the complaint, set up a contract of sale of the property under which they claim title, and by way of cross-complaint ask that title be quieted in them, and pray for $500 damages for unlawfully withholding conveyance of the property.

This controversy arises out of a written agreement between the parties for the sale of the property by plaintiff to defendant Michael S. Troup and wife, for $950. The questioned paragraphs of the agreement read in part as follows:

"RECEIPT AND AGREEMENT FOR SALE OF REAL PROPERTY

. . . . May 25, 1945.

"Received from Michael S. Troup the sum of Two Hundred and oo/100 ($200.00) Dollars, as a deposit on and part payment. for the following described property . . . which property said purchaser agrees to purchase subject to the restrictions . . . for the purchase price of Nine Hundred Fifty and 00/100 (950.00) Dollars, the balance of said purchase price to be paid within five years from date hereof, as follows, to wit: at the monthly rental of $12.00 per month until balance of purchase price is paid in full.

"AND IT IS HEREBY AGREED: First—That in the event said purchaser shall fail to pay the balance of said purchase price or complete said purchase as herein provided, time being of the essence of this contract, the amount of said deposit shall at the option of the seller, be forfeited as liquidated and agreed damages, or seller may apply said deposit on account of said purchase price and institute suit against the purchaser to compel the specific performance of this contract.

"Second—That said deposit shall remain in the hands of the undersigned broker, . . . until the deed or final contract to said property passes to said purchaser, or this contract is terminated. . . .

"Possession of said premises to be given upon recordation of deed or within —— days from date of recordation of deed.

"Seventh—That the taxes on said property for the current fiscal year ending June 30 following this date and the rents and interest on assumed indebtedness and Fire Insurance if acceptable to purchaser are to be prorated from date of delivery of deed or contract of sale. . . .

"This agreement is binding upon the heirs, executors, administrators, successors and assigns of the respective parties hereto. . . .

"The undersigned hereby approves and agrees to the foregoing contract, and agrees to purchase the above described property on the terms and conditions herein stated and authorizes seller to make conveyance to Michael S. Troup, and Dorothy A. Troup, as joint tenants.

"Michael S. Troup, Purchaser

"Dorothy A. Troup, Purchaser.

"Dated May 25th, 1945 . . .

"I agree to sell the above property on the terms and conditions herein stated. . . .     (Signed) Dolores Uren,

Seller."

Defendants' evidence shows that defendant Troup's brother was living on the premises in April, 1945, and was delinquent in rent payments; that about May, 1945, defendant Troup wrote to plaintiff in San Jose and inquired if she would sell the property; that plaintiff came to Fresno; that $100 was paid on the back rent of the brother; that defendants Troup talked about buying the place rather than paying rent on it and plaintiff orally agreed to sell it at that time for $950, with $200 down, and payments of $12 per month on the balance due; that nothing was said about defendants Troup renting the property; that plaintiff returned to San Jose, and about June 1st defendants Troup received the form of contract above mentioned, already drawn up by plaintiff's agent; that subsequently, it was signed and defendant Troup mailed $200 to her on June 4th; that payments of $12 per month were made by check thereafter for six months, the last payment being made on December 6, 1945. Some of these checks bore the endorsement "payment on house." A check for $14.17 was mailed to plaintiff on December 6th, as payment for taxes.

Defendants testified that plaintiff never gave them any notice of rescission or notice of default; never tendered a deed; never demanded any payment; that the property was not worth more than $950 at that time, due to its dilapidated condition; and that accordingly, they considered that they were only buying the lot. Defendant Troup testified that he put a new roof on the building, put in new plumbing, remodeled it generally, and that thereafter he considered its value at $1,500.

It appears that about 1946, the defendants Troup assigned and relinquished their interest in the contract of sale to defendant E. G. LaJoie and wife, and they took possession of the property, fixed it up, and sold it on a contract of sale to defendant Alexander. LaJoie testified that on January 2, 1946, he sent plaintiff a check for $24, as payment on the contract and accompanied it with a letter informing her he had purchased the property from the Troups and that he subsequently sent her, bimonthly, $24 checks until April, 1950; that she did not reply to his letters and never cashed or returned the checks; that in 1949, when he sent her one of the payments, he asked her to send him a bill for the balance due because he wanted to pay it off and wanted a deed to the property; that in 1950, he told plaintiff's then lawyer the same thing and he agreed to ascertain the balance due,

place the matter in escrow and have a deed delivered; that at the trial, in open court, he offered to pay the balance then due on the contract.

Plaintiff stated that when she came to Fresno in May, 1945, she found defendant Troup in her house; that she questioned him about it and that he then offered to pay her rent and fix it up; that later, he wrote about buying it; that she had a friend of hers who worked in a real estate office fix up the papers for her; that she never told this friend to write the contract in the language used and never intended the $12 to be applied on the payments but this amount was to be paid by Troup as rent until he paid the amount due on the contract; that the $200 he paid was not on the purchase price but was for back rent due her; that she had no legal advice and did not have any business experience; that when she received the checks from LaJoie she wrote him a letter and asked him who he was and that he informed her he was the new owner; that she informed him she had not sold the house; that thereafter he continued sending the checks; that she did not cash them but turned them over to her attorney; that she paid the taxes and insurance on the property; and that LaJoie never asked her the amount of the balance due nor did he demand a deed.

The court found generally in favor of defendants and specifically found that plaintiff signed the contract of sale; that the total purchase price of the property was $950; that she thereby agreed to and did accept $200 as down payment and agreed to accept $12 per month as payment on the balance due, without interest; that $72 was paid thereon by Troup; that LaJoie mailed 24 checks to her which totaled $600; that plaintiff received said checks without objection but did not cash them; that defendants have been in exclusive possession of the property since the contract was signed; that LaJoie did open an escrow with a title company and agreed to pay any balance due but plaintiff refused to tender a deed; that plaintiff never gave defendants any notice of default or that prompt compliance with the terms of the contract was required or that the contract of sale had been breached in any manner. It concluded that LaJoie was the owner in fee simple and entitled to the possession of the property and that plaintiff had no right therein; that there is due plaintiff from LaJoie $678 on the purchase price, and $53.71 for taxes paid by plaintiff; that $950 was the reasonable value of the property at the time of signing the contract of sale; that pay-

ment of said sums be conditioned upon the delivery of the deed by plaintiff transferring her interest in said property to La-Joie, free and clear of encumbrances. Judgment was entered accordingly.

On this appeal it is contended that the court erred in holding that defendants were not obligated to pay plaintiff $12 per month *as rental* in addition to the amount of the contract price. We see no merit to this contention. The contract, as written, when construed in connection with the evidence bearing thereon, clearly indicates that the $12 payments were to be considered as payments on the contract and not as rental payments. At least the trial court was justified in so holding. (Civ. Code, § 1641; *Taylor* v. *J. B. Hill Co.*, 31 Cal. 2d 373 [189 P.2d 258]; *Moss* v. *Williams*, 84 Cal.App.2d 830, 835 [191 P.2d 804]; *Mahanay* v. *Lynde*, 48 Cal.App.2d 79 [119 P.2d 430].)

The second point is that the contract does not constitute a defense to plaintiff's quiet title action since it would not justify a decree for its specific performance, in this: (a) that the terms of the agreement are uncertain and indefinite; (b) that $950 was an inadequate price; and (c) that the agreement is unfair and oppressive. Based upon substantial evidence, the court properly found against plaintiff on these issues and such findings will not be disturbed on appeal. (*Arundel* v. *Turk*, 16 Cal.App.2d 293, 295 [60 P.2d 486].)

Plaintiff's third claim is that since defendants made default in the payments due under the contract, time being of the essence, their rights thereunder were automatically terminated, citing 25 California Jurisprudence, page 607, section 113; and *Ross* v. *Gentry*, 94 Cal.App. 742 [271 P. 1098].

The agreement was dated May 25, 1945. All payments were due after five years from that date, i. e., May 25, 1950. The court found that plaintiff did not, at any time, demand the balance due thereon; she did not offer a deed of the property, and did not declare forfeiture or give any notice thereof to defendants, and specifically found that defendants, on June 8, 1950, offered to place the balance due in escrow if plaintiff would execute a deed to the property. It was not until the filing of this action on June 13, 1950, that defendants had notice that they were in default in any payments and that the entire balance was due or that plaintiff claimed title by reason of any alleged forfeiture.

In *Boone* v. *Templeman*, 158 Cal. 290, 297 [110 P. 947, 139 Am.St.Rep. 126], it was held that:

". . . Where in a contract for the sale of land the price is made payable in installments at different times and the deed is to be made when the whole is paid, the vendor may, upon failure to pay any intermediate installment, forthwith sue for its recovery. But if he allows the whole to become due, the payment of the price then becomes a dependent and concurrent condition, non-payment alone does not put the vendee in default, the vendor must tender a deed as a condition to demanding payment of the price, and he cannot, without such tender, declare a forfeiture, or maintain a suit either for the whole price, or for an intermediate installment."

In *Thein* v. *Sticha*, 93 Cal.App.2d 295, 300 [209 P.2d 13], it was said:

". . . 'where both parties to a contract *in which time is made the essence thereof* allow the date of final payment to pass without action. Under these circumstances neither party can be subsequently placed in default by the other without a tender.'" (Italics ours.) See, also, *Ross* v. *McDougal,* 31 Cal.App.2d 114, 120 [87 P.2d 709].)

Plaintiff refused and still refuses to tender a deed. She did accept the down payment and received subsequent payments by check, some of which were cashed. No notice of default was given and no demand for payment was made. ■ After the right to declare a forfeiture for a particular default has been waived, the vendor must put the purchaser in default by demanding performance within a reasonable time before he may declare a forfeiture. (25 Cal.Jur. p. 618, § 119.)

■ Under the evidence and findings and the principle enunciated in the cited authorities, defendants were not automatically placed in default. Plaintiff should not now be permitted to claim a forfeiture without notice, without tendering a deed to the property, without affording defendants a reasonable opportunity to comply.

Since this appeal was perfected plaintiff's administrator made application to this court to allow him to produce additional evidence under rule 23(b) of the Rules on Appeal. ■ Plaintiff testified at the trial that she wrote a letter to LaJoie asking him who he was, how he came in possession of the premises, telling him that she had not sold the house, and was not accepting any of his money. LaJoie denied receiving a letter containing all of these statements but he did state that he wrote her that he had purchased the property from the Troups, sent her a check, and that he thereafter received no reply from her.

Plaintiff now offers in evidence a letter from LaJoie dated January 29, 1946, stating that the check she received was for two payments on the house that he bought from Troup. Plaintiff argues that this letter conclusively shows that plaintiff did write to LaJoie and that he did reply thereto; that plaintiff did thereby declare him in default and notified him of this fact; and that since plaintiff's administrator did not discover the existence of this letter until after the death of plaintiff, this court should receive it in evidence and reverse the finding of the court on this issue.

The letter itself does not support plaintiff's argument that default was therein declared nor that defendants were thereby notified of such fact. At most, it would only create a conflict in the evidence in respect to the question as to whether or not plaintiff did in fact write to LaJoie and that LaJoie did in fact answer the letter. The admission of this evidence would not be decisive and would not necessarily compel a contrary finding to that made by the trial court. Accordingly, the application should be denied. (*Bassett* v. *Johnson,* 94 Cal. App.2d 807, 810 [211 P.2d 939].)

■ Lastly, it is argued that the decree fails to protect the rights of plaintiff because it vests the title in LaJoie without requiring him to deposit the balance due on the purchase price. The decree does quiet defendant LaJoie's title to the property, and provides that plaintiff recover $678 plus taxes paid, but conditions such payment upon delivery of the deed. It contains no condition in case LaJoie fails or refuses to pay said sum. The decree therefore should be modified by adding thereto: "That plaintiff have restitution of the premises and title quieted in her in the event the defendant E. G. LaJoie does not pay to plaintiff within ten days from the date this judgment becomes final the sum found payable to her." (*Bird* v. *Potter,* 146 Cal. 286, 289 [79 P. 970] ; *Johnston* v. *Mulcahy,* 4 Cal.App. 547, 549 [88 P. 491].)

The decree is affirmed as modified. Application to allow plaintiff to produce additional evidence denied. Defendants to recover costs on appeal.

Barnard, P. J., and Mussell, J., concurred.