[Civ. No. 9522. Third Dist. Apr. 13, 1959.]

WILLIAM O. BECK et al., Respondents, v. MYRTLE E. COMBS, Appellant.

F. M. Brack for Appellant.

Robert D. Carter for Respondents.

SCHOTTKY, J.—Myrtle Broyles Combs, formerly Myrtle Broyles, has appealed from a judgment in favor of the above-named plaintiffs [William O. Beck and Florence Beck] in an action to quiet title to certain real property in Modesto.

The record shows that in May, 1948, Myrtle Broyles entered into a conditional sales contract with John Frazier and his wife, Elsie L. Frazier, whereby the Fraziers agreed to sell and Mrs. Broyles agreed to purchase an unimproved parcel of real property in Modesto for the sum of $650, payable $10 down and the balance in installments of $10 per month, including interest at the rate of 6 per cent on the deferred balance. Mrs. Broyles made the down payment and a few of the monthly payments on time, but for the balance of the payments she was continually delinquent. The Fraziers sent Mrs. Broyles several notices of default but thereafter accepted payments from her. The last payment made by her was in November, 1953, and the last credit on the loan was an insurance refund of $7.68. This made the total balance due $163.83, plus interest from June 1, 1953. After Mrs. Broyles purchased the prop-

erty she erected a small five room house on it. She estimated the value of the property to be between $1,500 and $2,000.

In November, 1954, the Fraziers mailed a notice of default to Mrs. Broyles, and in January of 1955 a notice of forfeiture was mailed. This last notice stated that all of Mrs. Broyles' rights under the contract had been terminated. Mr. Frazier testified that Mrs. Broyles never contacted him thereafter nor was he ever advised that she was willing to pay the balance due before he sold the property to the Becks.

The Becks purchased the property several months after January, 1955, for the sum of $765, which included the closing costs. When he purchased the property Mr. Beck knew that Mrs. Broyles was living on the property, and it was his understanding that he would have to get her off of the property. In January, 1956, the Becks brought this suit to quiet their title to the property. Mrs. Broyles answered and as a separate defense and by way of cross-complaint sought relief from forfeiture. It was uncontradicted that at the time of trial of this action the sum of $635 was deposited in escrow, which was for the purpose of paying the balance due on the contract.

The trial court quieted the title of the Becks, awarded them damages in the sum of $200, and adjudged that Mrs. Broyles had no interest or estate in the property. The court made no finding that the default of Mrs. Broyles was willful, fraudulent, or grossly negligent.

An arithmetical calculation shows that if Mrs. Broyles had made all her payments when due the balance due after the payment due on November 1, 1954, would have been $1.22. Therefore, from a practical standpoint, the final payment on the contract was due and payable on that date. The notice of default was mailed by the Fraziers after November 1, 1954. A notice of forfeiture was mailed in January, 1955. The record does not disclose that Mr. Frazier ever tendered a deed to Mrs. Broyles. The court did not find that, nor does the evidence compel a finding that such tender would have been unavailing, so that it would be excused. ■ It has long been the rule in this state "Where in a contract for the sale of land the price is made payable in installments at different times and the deed is to be made when the whole is paid, the vendor may, upon failure to pay any intermediate installment, forthwith sue for its recovery. But if he allows the whole to become due, the payment of the price then becomes a dependent and concurrent condition, nonpayment alone does not put the vendee in default, the vendor must tender a deed as a

586

condition to demanding payment of the price, and he cannot, without such tender, declare a forfeiture, or maintain a suit either for the whole price, or for an intermediate installment.'' (*Boone* v. *Templeman,* 158 Cal. 290, 297 [**110** P. 947, 139 Am.St.Rep. 126] ; see also *Kerr* v. *Reed,* 187 **Cal. 4**09 [202 P. 142] ; *Uren* v. *Troup,* 110 Cal.App.2d 419 [242 P.2d 895] ; *Thein* v. *Sticha,* 93 Cal.App.2d 295 [209 P.2d 13] ; *Katemis* v. *Westerlind,* 120 Cal.App.2d 537 [261 P.2d 553] ; *Holden* v. *Johnson,* 95 Cal.App.2d 872 [214 P.2d 18].) The same rule applies where the vendor seeks to quiet title if the facts are not such as would show that tender would be unavailing. (*Sausalito etc. Co.* v. *Sausalito Imp. Co.,* 166 Cal. 302 [136 P. 57] ; *Grimes* v. *Steele,* 56 Cal.App.2d 786 [133 P.2d 874].)

Applying the above rules, it is clear that the Fraziers would not have been entitled to quiet title to the property or sue for the balance or declare a forfeiture because at the time they attempted to do so the whole of the unpaid balance was due and they had never tendered a deed. They had not fulfilled all the conditions precedent on their part. Before they were entitled to maintain their action, a duty was incumbent on them to do so. It is also clear that the Becks were not bona fide purchasers for value without notice. They knew that Mrs. Broyles was in possession of the property. They never ascertained whether or not she claimed any right to the property. As such they could not be bona fide purchasers for value without notice, and they took subject to the equitable rights of Mrs. Broyles. (*Bone* v. *Dwyer,* 89 Cal.App. 535 [265 P. 292].) Their rights would be no greater than those of the Fraziers. Accordingly, they were not entitled to have their title quieted without first tendering a deed.

What we have already stated requires a reversal of the judgment, and it is unnecessary to discuss other contentions made in the briefs. However, we shall discuss briefly appellant's contention that appellant was entitled to relief from forfeiture.

 Section 3275 of the Civil Code provides for relief against forfeitures. It presupposes that the party seeking relief is in default. (*Barkis* v. *Scott,* 34 Cal.2d 116, 120 [208 P.2d 367].) The same case also states at pages 121-122: however, is in a better position to secure relief than one who is ''A vendee in default who is seeking to keep the contract alive, seeking to recover back the excess of what he has paid over the amount necessary to give the vendor the benefit of his bargain after performance under the contract has terminated.

. . . [W]hen the default has not been serious and the vendee is willing and able to continue with his performance of the contract, the vendor suffers no damage by allowing the vendee to do so. In this situation, if there has been substantial part performance or if the vendee has made substantial improvements in reliance on his contract, permitting the vendor to terminate the vendee's rights under the contract and keep the installments that have been paid can result only in the harshest sort of forfeitures. Accordingly, relief will be granted whether or not time has been made of the essence. . . ."

In the instant case the trial court was obligated to consider the issue of relief from forfeiture since it was put in issue by the pleadings. Failure to do so was reversible error. (*Crofoot* v. *Weger*, 109 Cal.App.2d 839 [241 P.2d 1017].) The finding that Mrs. Broyles was in long continued default does not answer the question. Under the facts of this case the trial court should have granted relief. At least the court should have ruled on the willfulness or gross negligence of Mrs. Broyles before denying her relief.

The judgment is reversed.

Van Dyke, P. J., and Peek, J., concurred.